IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00684-MEH

ANN LOPEZ,

    Plaintiff,

v.

HOUSING SOLUTIONS FOR THE SOUTHWEST,

    Defendant.

_____

### ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Motion for Summary Judgment. ECF 227. The matter is fully briefed, and the Court finds that oral arguments will not materially assist in its adjudication. For the following reasons and based on the submitted record, the Motion is **granted**.

### BACKGROUND

**I.  Claim for Relief**

One claim for relief in Plaintiff's Third Amended Complaint (ECF 108) remains at issue, and that is for First Amendment retaliation brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges that soon after she moved into her rental unit in Defendant's housing development, she came into conflict with a neighbor. Both she and the neighbor are Native American. ECF 227-11. Although Defendant advised her to report the neighbor's actions to the police, Plaintiff perceived Defendant to be favoring the neighbor over her. Plaintiff also alleges that Defendant's staff made comments about Native Americans. Plaintiff sought to file a complaint about Defendant's discriminatory harassment with the United States Department of Housing and Urban Development ("HUD").

1

From her reading of the HUD information packet that came with her participation in the Housing Choice Voucher Program (ECF 237 at 53–59), the first step in the grievance process was to submit it to Defendant. However, Defendant allegedly hindered her use of the grievance process by suppressing her complaints and not forwarding them to HUD.

## II.     Material Undisputed Facts

1. Defendant is a private, nonprofit corporation that was Plaintiff's landlord. ECF 227-3 at 21; ECF 227-4 at ¶¶ 3, 5.

2. Defendant is not a state agency, government entity, or an arm of HUD. ECF 227-3 at 2.

3. Defendant accepts Section 8 vouchers through HUD's Housing Choice Voucher Program. ECF 227-3 at 2; ECF 227-4 at ¶ 7.

4. Defendant does not provide a student housing program. ECF 227-3 at 2.

5. Plaintiff moved to Durango, Colorado, in August 2016. ECF 227-3 at 3.

6. On August 9, 2016, Plaintiff applied to Defendant for housing. ECF 227-3 at 5; ECF 227-5.

7. In September 2016, Plaintiff signed a lease and became a tenant at Defendant's Homeward Bound property. ECF 227-3 at 6; ECF 227-4 at ¶ 6; ECF 227-6.

8. After she moved in, Plaintiff began to have problems with a neighbor. ECF 227-3 at 6. She alleges that the neighbor harassed her and her son, came by at unreasonable hours, asked her about drugs, threatened to have her evicted, vandalized her car, and was otherwise disruptive. ECF 227-3 at 6–7.

9. On September 26, 2016, Plaintiff began reporting the neighbor to the police. ECF 227-3 at 7; ECF 237 at 5–19.

10. On October 3, 2016, Plaintiff submitted a written complaint to Defendant about the neighbor. ECF 227-7. Defendant encouraged Plaintiff to go to the police. ECF 227-3 at 9–10; ECF 227-4 at ¶ 10.

11. On January 31, 2017, Plaintiff obtained a temporary restraining order against the neighbor. ECF 227-8.

12. Plaintiff lodged complaints about the condition of her unit and the property with Defendant. ECF 227-3 at 10–11.

13. In addition to the October 3, 2016 complaint, Plaintiff continued to lodge complaints with HUD and other entities. ECF 227-3 at 12.

14. Plaintiff does not submit into this lawsuit documentation of any complaint about harassment or racial discrimination by Defendant. ECF 227-3 at 13, 22. The record contains only one email from HUD with the subject line "Automatic reply: Discrimination" dated January 3, 2017 that was generated to confirm receipt of her communication. ECF 227-3 at 23; ECF 227-9; ECF 237 at 20. The record does not contain the underlying complaint from Plaintiff that prompted that automatic reply. ECF 227-3 at 12.

15. Defendant encouraged Plaintiff to submit the complaint to HUD that generated the January 3, 2017 automatic reply. ECF 227-3 at 25. Plaintiff was not prevented from submitting complaints to HUD. ECF 227-3 at 15.

16. She continued to speak out about issues. ECF 227-3 at 14.

17. On March 22, 2017, Plaintiff wrote a letter asking for advanced payment of a hardship grant award, citing her ongoing safety concerns at Defendant's property. ECF 227-10.

18. On March 23, 2017, Defendant released Plaintiff from their rental contract, and she moved out. ECF 227-3 at 16; ECF 227-4 at ¶ 13; ECF 227-16.

19.     In April 2017, Plaintiff signed a lease with a different property, Hermosa Hills Condominiums, unaffiliated with Defendant. ECF 227-3 at 17. She lived there for one year and then moved into the Eagle Ridge complex in South Dakota. ECF 227-3 at 18.

20.     On October 19, 2018, HUD's Denver office sent her a letter in response to her telephone call on September 21, 2018 in which she alleged housing discrimination. Plaintiff reported harassment in September 2016 by her neighbor at Defendant's property who was jealous of her tuition waiver. Plaintiff complained that Defendant had ignored her written complaint of harassment and did not attempt to resolve the matter. ECF 227-11.

21.     On December 14, 2018, Plaintiff emailed HUD asking for help to rescind her lease at Eagle Ridge Apartments because of unclean conditions, discrimination, and retaliation. ECF 227-13.

22.     On February 6, 2019, HUD sent Plaintiff a letter in response to her October 15, 2018 internet inquiry and November 29, 2018 telephone conversation. Plaintiff was complaining about two robberies, various conditions about the unit and property, and management. ECF 227-14.

23.     On an unknown date, Plaintiff emailed HUD to say that its representative had not interviewed her fairly about her complaints about the Section 8 program during the 2013 to 2018 time frame. ECF 227-12. In another undated correspondence to HUD, Plaintiff complained about discrimination and housing conditions in her Section 8 housing in South Dakota. ECF 227-15.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws

5

all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I. Section 1983 Liability

Before considering the merits of the claim, the Court first must determine whether Defendant can be held liable under 42 U.S.C. § 1983. "Section 1983 permits suits against persons who, acting under the color of state law, deprive a United States citizen of [her] constitutional rights." *Boutwell v. Keating*, 399 F.3d 1203, 1208–09 (10th Cir. 2005). It follows that a requirement for any relief under § 1983 is a defendant who is a state actor. *Nagy v. Spence*, 172 F. App'x 847, 848 (10th Cir. 2006).

In addition to being a required element of a § 1983 cause of action, state actor status also is required for the First Amendment to apply. "The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Cmty. Access Corp. v. Halleck*, — U.S. —, 139 S.Ct. 1921, 1926 (2019). In other words, for Defendant to be found liable, it must be a state actor, but the evidence shows that Defendant is a private corporation.

There are situations when a private entity may be considered a state actor, such as when it performs a traditional, exclusive public function, but it is met only under "a few limited circumstances" with "very few functions fall[ing] into that category." *Id.* at 1928–29. For example, *Manhattan* found a private nonprofit corporation that the city designated to operate public access cable channels not subject to the First Amendment. *Id.* at 1926. Plaintiff argues that Defendant receives government funding (through Section 8 housing vouchers) and is governed by HUD regulations. However, government funds and regulation do not make a state actor out of private entity. *Id.* at 1931–32. Case law specific to the housing context confirms that a housing

6

corporation's participation in HUD's Section 8 voucher program does not convert it into a state actor and thus may not be held liable under § 1983. *Guy v. Carson*, No. 20-cv-01581-DDP (SHK), 2020 WL 3884904, at *13–16 (C.D. Cal. June 22, 2020); *Holden v. E. Hampton Town*, No. 15-cv-4478, 2017 WL 1317825, at *5–6 (E.D.N.Y. Mar. 31, 2017); *Baldridge v. Indep. Apartments*, No. 16-2293-JDT-DKV, 2016 WL 11479289, at *4–5 (W.D. Tenn. July 6, 2016). By contrast, the defendants in the two cases cited by Plaintiff, *Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) and *Shero v. City of Grove, Okla.*, 510 F.3d 1196 (10th Cir. 2007), were government actors.

## II.     First Amendment Retaliation

The other requirement for a § 1983 claim is a deprivation of rights secured by the U.S. Constitution or federal statutory law. Plaintiff alleges First Amendment retaliation which requires a showing of: (1) engagement in constitutionally protected speech activity, (2) actions by Defendant sufficient to chill a person of ordinary firmness from continuing to engage in that activity, and (3) Plaintiff's exercise of constitutionally protected conduct substantially motivated Defendant's adverse actions. *McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 904 (10th Cir. 2002). The evidence does not permit a finding in Plaintiff's favor of a constitutional violation under that definition.

A.     <u>Protected Speech</u>

The First Amendment protects speech in the public context, such as the right to criticize public officials or to petition the government for redress of grievances. *Id*. Viewed from the other perspective, it prevents government action that chills protected speech or expression. *Id*. at 905. However, it does not protect the vindication of private rights (that are not matters of public concern). *Id*. at 904. Plaintiff alleges that on three occasions, she attempted to file a complaint with Defendant. However, she submits no documentary evidence of those formal complaints, and

consequently, the record lacks direct evidence of their content or subject matter. She alleges that they concerned comments by some of Defendant's staff about Native Americans and adverse actions by Defendant against Plaintiff because she is Native American. Beyond that, Plaintiff provides no details about Defendant's discriminatory actions. Nor does she provide an affidavit to support the allegation, although she does declare under penalty of perjury the truth of her statements. ECF 239 at 29. The Court assumes for present purposes that a racial discrimination grievance about a housing provider, even if a private entity, is a subject of public concern and thus would be protected speech. To this extent, the evidence could be construed as supporting the first element.

The only written complaint that is of record, dated October 3, 2016, does not discuss any discrimination or related matter. It is limited solely to the conflict with her neighbor, which is a private matter between a tenant and landlord. Consequently, it does not constitute protected speech, and Plaintiff cannot establish the first element on the basis of it.

B.  Injury

The second element requires Plaintiff to show that she suffered an injury sufficient to chill her speech, *Holden*, 2017 WL 1317825 at *6, but she fails to demonstrate any concrete injury. Even if Defendant did not forward her complaints, the evidence shows—and Plaintiff admits— that she still filed a complaint directly with HUD. In other words, she was able to complete the grievance process, and bringing the complaint to HUD's attention was her ultimate goal. Construing the evidence in Plaintiff's favor, the record shows only that Defendant unsuccessfully tried to hinder the grievance process. Moreover, if Defendant simply did not assist with the grievance process or just made it more difficult to complete, that would not constitute a free speech violation. *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001).

Plaintiff submits evidence of many other grievances submitted to both HUD and a variety of other government entities. ECF 237; ECF 242. That evidence further suggests that she was not directly hindered in her ability to pursue her complaint against Defendant. Although the second element is an objective standard that measures the chilling effect of the injury against a person of ordinary firmness rather than the Plaintiff, herself, the grievance record still bears some relevance to whether Defendant's actions were sufficiently egregious to chill speech. *Smith v. Plati*, 258 F.3d at 1177; *Green v. Snyder*, 525 F. App'x 726, 730 (10th Cir. 2013) (finding the failure to provide grievance forms, even if intentional, would not chill a person of ordinary firmness from continuing to file grievances). The second element asks whether the adverse conduct was so egregious that an official would be on clear notice that his actions would deter the ordinary person from continuing. *Perez v. Ellington*, 421 F.3d 1128, 1132 (10th Cir. 2005). Plaintiff does not meet that standard. Instead, she shows only *de minimis* concrete injury, but that does not support a retaliatory prosecution claim. *Shero*, 510 F.3d at 1203.

C.    Unlawful Retaliatory Motive

The third element requires a showing that but for the retaliatory motive, Defendant would not have taken the adverse action. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Defendant argues that the third element is not met because it took no adverse actions against her. Rather than suppress her pursuit of her various grievances, Defendant encouraged her to seek help from law enforcement and HUD. The evidence confirms that Plaintiff in fact did pursue those options, filing police reports, obtaining a restraining order, and filing a complaint with HUD. What remains is Plaintiff's uncorroborated allegation that Defendant did not forward additional complaints, regarding discrimination, to HUD. However, Plaintiff submits no specific evidence of active suppression or evidence from which unlawful intent could be inferred. Plaintiff does allege

in the current briefing that Defendant favored the neighbor over her, but it also is undisputed that it was Defendant who advised her to report the neighbor to the police.

## **CONCLUSION**

Through the three elements identified above, the law defines what constitutes an unlawful act of First Amendment retaliation. Fed. R. Civ. P. 56 provides the standard for testing whether there is sufficient evidence to warrant sending the claim to the factfinder for resolution. Plaintiff shows no genuine dispute of material fact over whether she can prove its required elements. To the contrary, the evidence shows that Defendant's actions were not unlawful under that definition. Moreover, the evidence shows that Defendant may not be sued under § 1983 in the first place.

Accordingly, the Court **grants** Defendant's Motion for Summary Judgment [filed November 16, 2020; ECF 227]. The Clerk of the Court shall enter Final Judgment in Defendant's favor and close this case.

Entered this 1st day of February, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge